Bernard GREENE, Gerald Abban, Robert Burns, Harry Byrne, Brendan Flynn, Ralph Caulfield, Stephen Cawley, Richard Keefe, Michael Locke, Richard MacDonald, Michael O'Connor, Jr., Kelley O'Connell, Raymond Mosher, John Pels, Norberto Perez, Thomas Settipani, Thomas Shone, Eugene Valliere and Michael Wosney

v.

#### CITY OF BOSTON

No. CIV.A. 01–11891–RGS.

United States District Court, D. Massachusetts.

June 14, 2002.

Alan J. McDonald, McDonald & Associates, West Newton, MA, James F. Lamond, McDonald 7 Assoc., Newton, MA, for Plaintiffs.

William V. Hoch, Office of the Legal Advisor Staff Attorney, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

STEARNS, District Judge.

Plaintiff Boston police officers brought this action under Title VII, 42 U.S.C. § 2000e et seq., alleging that they were discriminated against on the basis of their race in connection with departmental promotions to the rank of sergeant. The City of Boston has moved to dismiss on the basis that the plaintiffs, with the exception of Bernard Greene,[1] failed to file a timely charge with either the Massachusetts Commission Against Discrimination (MCAD) or the Equal Employment Opportunity Commission (EEOC). Plaintiffs assert that under the "single filing rule" they are permitted to "piggyback" on Greene's claims.

### BACKGROUND

Plaintiffs are Boston police officers who received scores of 85 (or in two cases 86) on a 1992 promotional examination. On September 11, 1996, Commissioner Paul Evans made 25 promotions to the rank of sergeant. Of the 25 selectees, 22 were white officers who had scored 86 or higher. Three were black officers who had scored 84. None of the plaintiffs was selected.[2]

On February 20, 1997, Greene filed a complaint with the MCAD. His complaint was cross-filed with the EEOC. On August 23, 2001, the EEOC sent Greene a "Dismissal and Notice of Rights." Greene, joined by the other plaintiffs, filed this Title VII action on November 2, 2001. On June 12, 2002, the court heard oral argument on the City of Boston's motion to dismiss.

### DISCUSSION

■ Before bringing an employment discrimination suit under Title VII, a plaintiff must file a preliminary charge

---

1. The motion to dismiss is not directed to Greene.

2. When reviewing a motion to dismiss, "[w]e must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir.1994).

with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e). Under the single filing rule, also referred to as "piggybacking," similarly situated plaintiffs, who have failed to file administrative charges, or who have filed untimely charges, are permitted to piggyback on a timely-filed charge that gives the EEOC and the employer fair notice of allegations of class-wide discrimination. *See Kloos v. Carter–Day Co.*, 799 F.2d 397, 400–01 (8th Cir.1986). The single filing rule has been adopted in one form or another by the majority of Circuits. *See, e.g., Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101–02 (11th Cir.1996); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir.1995); *Anson v. Univ. of Tex. Health Science Center*, 962 F.2d 539, 541–42 (5th Cir.1992); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057–59 (2nd Cir.1990).

Courts have used different tests, either alone or in combination, for determining whether an administrative charge suffices to permit piggybacking by a subsequent plaintiff. The broadest test requires only that the claims of the administrative claimant and the subsequent plaintiff arise out of the same circumstances and occur within the same general time frame. That is the test we used in *Snell* [*v. Suffolk County*, 782 F.2d 1094 (2d Cir.1986) ] in permitting piggybacking by correctional officers alleging discrimination in a county jail. A somewhat narrower test requires that the administrative claim give notice that the discrimination is "class-wide," i.e., that it alleges discrimination against a class of which the subsequent plaintiff is a member. *See Kloos v. Carter–Day Co.*, 799 F.2d 397, 401 (8th Cir.1986) (alternate standard). A still narrower test requires that the administrative claim not only allege discrimination against a class but also allege that the claimant purports to represent the class or others similarly situated. *See Naton v. Bank of California*, 649 F.2d 691, 697 (9th Cir. 1981).

Where the grievances arise in a work unit of modest size, like the jail in *Snell* or the union local in *Allen v. Amalgamated Transit Union Local 788*, [554 F.2d 876, 882–83 (8th Cir.1977) ], we agree that mere similarity of the grievances within the same general time frame suffices to permit the "single filing rule." As former Judge Bell asked in the context of claims by employees at a single plant, "If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful." *Oatis v. Crown Zellerbach*, 398 F.2d at 498. However, where the grievances are alleged to arise throughout a large group, the lack of conciliation of one individual grievance does not necessarily mean that conciliation efforts would be unavailing if the EEOC and the employer were alerted to the broad scope of the claim. Though we do not think the administrative claim in such circumstances need specify that the claimant purports to represent a class or others similarly situated, there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim. Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group.

*Tolliver*, 918 F.2d at 1057–58.

In most Circuits in which it has been adopted, the single filing rule is not limited to class actions, but is interpreted flexibly to permit individual plaintiffs to join in a properly filed lawsuit where the amalgam-

ated claims " 'aris[e] out of similar discriminatory treatment in the same time frame.' " *Snell*, 782 F.2d at 1100 (quoting *Ezell v. Mobile Housing Board*, 709 F.2d 1376, 1381 (11th Cir.1983)). *See De Medina v. Reinhardt*, 686 F.2d 997, 1012 (D.C.Cir.1982); *Crawford v. United States Steel Corp.*, 660 F.2d 663, 665–66 (5th Cir. 1981); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d at 882–83 (8th Cir.1977). At least one Circuit, the Third, is less generous, holding that

> outside the context of a representative or class action, an individual plaintiff must file a timely administrative charge.... [F]iling a charge with allegations broad enough to support a subsequent class action lawsuit [does not] alleviate the burden of filing the class action itself, with the attendant requirement of class certification.... [I]f plaintiffs choose to bring suit individually, they must first satisfy the prerequisite of filing a timely EEOC charge.

*Communications Workers of America, AFL–CIO v. New Jersey Dept. of Personnel*, 282 F.3d 213, 217–18 (3d Cir.2002).

The rationale justifying a flexible interpretation of the single filing rule was nicely stated by the *Tolliver* court:

> [t]he purpose of the administrative charge requirement is to afford the agency the opportunity to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). If the agency charged with that task is satisfied that a timely filed administrative charge affords it sufficient opportunity to discharge these responsibilities with respect to similar grievances, it serves no administrative purpose to require the filing of repetitive ADEA charges....

918 F.2d at 1057. The *Tolliver* court also extended the rule to apply to cases in which the piggybacking plaintiff files a separate lawsuit of his own. *See id.* ("The purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit or initiate their own.").

While the First Circuit did not reach the merits of the single filing rule in *Basch v. Ground Round, Inc.*, 139 F.3d 6 (1st Cir. 1998), it did acknowledge this court's prediction that in an appropriate case it would adopt the rule, which it described as permitting piggybacking on a timely-filed charge that "gives the EEOC and the employer adequate notice of allegations of class-wide discrimination." *Id.*, at 9. My predictive view remains unchanged. Is this, however, the appropriate case?

■ Greene in his EEOC charge stated as follows:

> I, Bernard E. Greene Jr[.], the Complainant believe that I was discriminated against by C–Boston Police Department, on the basis of my Race, Color. This is in violation of M.G.L. Chapter 151B S4 P1.
>
> 1. I am a white male and I have been employed as Boston Police Officer since 2/89. In 9/96, during the most recent rounds of promotion, I was notified that I did not receive said promotion. Despite having lower civil service exam scores than myself, minority officers were promoted. The Respondent has indicated that these officers were promoted as part of an affirmative action consent decree. This action was to have been vacated in 1992. Because of my race and color (Caucasian) the Respondent denied me a promotion.

Complaint, Ex. 2.

While Greene's charge makes no allegations of class-wide discrimination, nor any

reference to similarly situated grievants, plaintiffs argue that the charge would have reasonably alerted the City of Boston that other white candidates

> might have the same complaint about their similarly having been passed over for promotion because of their race.

> Greene's filing also was enough to alert the EEOC to the fact that this was not an isolated act of discrimination but involved more than one race-based promotional decision. It alleged enough to give the EEOC a chance to eliminate the employment practice he was challenging, i.e., the use of race, in that round of promotions, as a determinative selection criteria, if it had agreed with him that such a practice was unlawful.

Plaintiffs' Memorandum, at 14–15.

The first of these propositions is undeniably true, and the City does not argue otherwise. Commissioner Evans, as the appointing authority, knew that Greene was only one of many white candidates with higher scores who had been passed over in favor of the lower-scoring black candidates. And given the acrimonious and litigious history of the consent decree which led Evans to give promotional preference to the black candidates, one may reasonably assume that the City was aware that Greene was not alone in his belief that he had suffered disparate treatment.

The second proposition is more troublesome. Would a reasonable EEOC compliance officer have known from the allegations of the charge that Greene was potentially speaking for a class of similarly frustrated white candidates? In this regard, the charge is decidedly deficient. It fails to refer to any officer other than Greene who was passed over in favor of the three lower-scoring black applicants. *Contrast Howlett*, 49 F.3d at 196 (where a reference in the charge to "others similarly situated" was found to provide sufficient notice that individuals other than the complainant had been affected by the employer's discriminatory practices). An EEOC compliance officer reviewing the charge could reasonably have understood from its language that Greene was the single bypassed white candidate with a higher civil service score, an understanding that would have been reinforced by the fact that Greene was the only unsuccessful candidate to file a charge.

The *Tolliver* court's identification of three different "tests" for applying the single filing rule, while useful, conflates two distinct issues. What the *Tolliver* court described as the "broad test," is really a description of the policy justifying the single filing rule itself, that is, within a discrete work group a discriminatory practice is likely to affect all similarly situated employees in the same way, thereby making group conciliation practicable. On the other hand, in a large organization, as the *Tolliver* court went on to point out, it may not be apparent that something more than an isolated act of discrimination has occurred unless the charge contains "some indication that the grievance affects a group of individuals." *Tolliver*, 918 F.2d at 1058. There is no doubt that on the allegations of the instant complaint, plaintiffs fall within the ambit of the "broad test," in the sense that they comprise a discrete and identically situated group that was impacted by the same discriminatory act.

This, however, is a different issue than the one addressed by what the *Tolliver* court denominated as the "narrower" and "still narrower" tests. These latter tests are concerned with the content of the charge itself and what it must say to provide fair notice to the EEOC that classwide discrimination may be afoot. The first of these tests requires that the charge

contain factual allegations sufficient to give rise to an inference of class-wide discrimination. The second requires actual notice that the claimant is purporting to represent the interests of a class or other persons "similarly situated."

Plaintiffs recognize that Greene's charge fails to meet either of these notice tests, but argue that a reasonable EEOC investigation would have inevitably disclosed the existence of an aggrieved class. This, too, seems indisputable, but it raises another question. Would the First Circuit, in adopting the single filing rule, also adopt a "reasonable investigation rule," that is, would it permit piggybacking if an investigation of a charge by compliance authorities would have led to the discovery of similar discrimination against others? I think not, and for this reason. I believe that the Court would recognize the practical need of both the EEOC and the MCAD, agencies with notoriously limited resources, to give priority to the investigation of charges that point to the likelihood of class-wide discrimination. The problem with plaintiffs' reasonable investigation rule is that it would require investigation into the possibility that persons other than the claimant were affected by a discriminatory act in virtually every case. While I do not think that the First Circuit would endorse a test as rigid as the one adopted by the Third Circuit, requiring an actual assertion of class representation, I am persuaded that for sound policy reasons our Circuit would require that an allegation of class discrimination be apparent on the face of the charge. Because that is not the case here, the motion to dismiss will be allowed.

### ORDER

For the foregoing reasons, the motion to dismiss is *ALLOWED*. The parties will within fourteen (14) days of this Order submit a proposed joint scheduling order addressing the complaint of plaintiff Greene.

SO ORDERED.