# Legality of EEOC's Class Action Regulations

The Office of Legal Counsel has the authority to resolve the legal questions the Postal Service raised with respect to the Equal Employment Opportunity Commission's class action regulations.

The Equal Employment Opportunity Commission's class action regulations applicable to administrative complaints against federal government agencies are not contrary to Title VII in the manners suggested by the United States Postal Service: the regulations do not purport to prevent claimants from filing actions in federal court; they do not frustrate the statutory exhaustion requirement; and they do not forestall the running of the limitations period.

September 20, 2004

MEMORANDUM OPINION FOR THE VICE PRESIDENT AND GENERAL COUNSEL
UNITED STATES POSTAL SERVICE

You have asked whether certain class action regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") applicable to administrative complaints against federal government agencies are contrary to Title VII of the Civil Rights Act of 1964. We conclude that they are not inconsistent with Title VII in the manners you suggest.

## I.

We begin with a brief overview of the applicable statutory and regulatory provisions at issue. Section 2000e-16 of title 42, U.S. Code, provides that personnel actions of the federal government, including those of the United States Postal Service ("USPS"), "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a) (2000). Section 2000e-16 then specifically assigns the EEOC the authority to enforce this requirement:

> Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies . . . and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.

*Id.* § 2000e-16(b). In pursuance of this authority, the EEOC has created a detailed administrative procedure for resolving claims of discrimination by federal employees or applicants for federal employment, including hearings before administrative law judges and appeals to the EEOC itself. The complaining employee or applicant may, subject to conditions, seek relief in the federal courts if he is dissatisfied with the results of this administrative process. *Id.* § 2000e-

16(c). An agency, however, may not seek judicial review of the decisions of the EEOC. *See id.* § 2000e-16(b), (c).

Your specific questions involve the EEOC's administrative process for resolving class action complaints. *See* 29 C.F.R § 1614.204 (2003). This process begins when an aggrieved individual, after completing a counseling process, files a class complaint with the agency that allegedly discriminated against him. *See id.* § 1614.204(b), (c). The agency then has thirty days to forward the complaint to the EEOC, which assigns the complaint to an administrative judge. *Id.* § 1614.204(d). The administrative judge first must decide whether to recommend certification of the class, which he may do if the proposed class meets the requirements of numerosity, commonality and typicality, and if the complainant who is the proposed agent for the class will "fairly and adequately protect the interests of the class." *Id.* § 1614.204(a)(2), (d)(2). Once the administrative judge makes his recommendation, the agency must, within forty days, decide whether or not to accept the complaint. *Id.* § 1614.204(d)(7). If the agency dismisses the class complaint, the complainant may appeal to the EEOC or file a civil action. *Id.* If the agency accepts the class complaint, it must notify the class members. *Id.* § 1614.204(e).

Discovery then begins and lasts not less than sixty days. *Id.* § 1614.204(f). Once discovery has concluded, the administrative judge conducts a hearing and issues a report and recommendations on the merits of the complaint. *Id.* § 1614.204(h), (i). Upon receipt of this report, the agency has sixty days to issue a "final decision" stating whether it will "accept, reject, or modify the [administrative judge's] findings." *Id.* § 1614.204(j)(1). This "final decision . . . shall, subject to subpart D of this part [addressing the appeal rights of the complainant and the agency], be binding on all members of the class and the agency." *Id.* § 1614.204(j)(6). The agency must then notify the complainants of its final decision, as well as of their appeal rights under subpart D. *Id.* § 1614.204(j)(7), (k). Where the agency has found discrimination, members of the class may then file claims for individual relief. *Id.* § 1614.204(*l*).

If the class agent or any member who has filed a claim for individual relief is unsatisfied with the final action of the agency, he may either appeal to the EEOC or file a civil action in federal court. *Id.* §§ 1614.401(c), 1614.407. In addition, if at any time during this process, more than 180 days has passed since the filing of the initial complaint, an individual or the class may file an action in federal court. *Id.* § 1614.407. With respect to appeals to the EEOC, the EEOC has delegated the responsibility for handling them to the Office of Federal Operations ("OFO"). *Id.* § 1614.403–.405. There is no time limit in which the OFO must act; however, 180 days after the filing of the appeal, the class or a member who has filed a claim for individual relief may file a civil action in federal court. *Id.* § 1614.407(d). Alternatively, the class may await the decision of the OFO and, if dissatisfied, may file a civil action within ninety days of that decision. *Id.* § 1614.407(c). The

agency is not authorized to proceed in federal court should it be dissatisfied with the results of the administrative process. *See id.* §§ 1614.407, 1614.502.

The class agent and the agency may resolve the complaint by written agreement at any time. *Id.* § 1614.204(g)(2), (3). Notice of the resolution must be provided to all class members, who may then petition to have the resolution vacated on the ground that it is "not fair, adequate and reasonable to the class as a whole." *Id.* § 1614.204(g)(4). The administrative judge considers these petitions. If he finds that the resolution is fair, adequate and reasonable, then the resolution binds all members of the class. *Id.* If, on the other hand, the administrative judge determines that the proposed resolution is unfair to the class as a whole, he vacates the resolution and restarts the adjudicatory process. *Id.*

With this statutory and regulatory background in mind, we now turn to the legal questions presented by your request.

## II.

We first address the EEOC's arguments that, under Executive Orders 12067 and 12146, we should refrain from resolving the legal questions you raise. For the reasons explained below, we conclude that neither argument establishes that this Office lacks the authority to resolve the legal questions here presented.

## A.

The EEOC first argues that section 1-307 of Executive Order 12067 prohibits this Office from addressing the merits of the legal questions at issue. Section 1-307(b) provides:

> Whenever a dispute which cannot be resolved through good faith efforts arises between the Equal Employment Opportunity Commission and another Federal department or agency concerning the issuance of an equal employment opportunity rule, regulation, policy, procedure, order or any matter covered by this Order, the Chairman of the Equal Employment Opportunity Commission or the head of the affected department or agency may refer the matter to the Executive Office of the President. Such reference must be in writing and may not be made later than 15 working days following receipt of the initiating agency's notice of intent publicly to announce an equal employment opportunity rule, regulation, policy, procedure or order. If no reference is made within the 15 day period, the decision of the agency which initiated the proposed issuance will become effective.

Exec. Order No. 12067, 3 C.F.R. § 208 (1979). The EEOC argues that USPS "should not be permitted to raise a matter under the general dispute resolution mechanism of E.O. 12146 that could have and should have been raised under the

more specific process for resolving disputes between agencies over EEO-related regulations" set forth in section 1-307(b). Letter for Noel J. Francisco, Deputy Assistant Attorney General, Office of Legal Counsel, from Peggy R. Mastroianni, Associate Legal Counsel, Equal Employment Opportunity Commission, *Re: EEOC's Class Complaint Regulation* at 2 (Nov. 14, 2003) ("EEOC Letter").

We disagree with the EEOC's interpretation of Executive Order 12067. The EEOC's argument appears to rest on the assumption that section 1-307 sets forth the exclusive mechanism by which an agency may challenge an equal employment opportunity rule, regulation, policy, procedure or order. Were this true, then, for example, the only recourse open to an agency that has, after issuance and in light of practical experience, come to believe that a particular regulation reflects bad public policy, would be to seek an amendment to the Executive Order. It could not simply seek to have that regulation withdrawn or amended through ordinary interagency processes, since, under the EEOC's view of Executive Order 12067, such processes would be precluded by operation of section 1-307(b). Nothing in section 1-307(b) requires such a result. Rather, section 1-307(b) simply establishes a process that must be followed before a proposed rule or regulation can take effect. As the last sentence of that section states, "[i]f no reference is made within the 15 day period, the decision of the agency which initiated the proposed issuance will become effective." Section 1-307(b) does not, however, preclude an agency from challenging a rule or regulation—be it on policy or legal grounds—after the regulation has been issued.[1]

We thus conclude that section 1-307 poses no bar to our addressing the legal questions you have raised.

## B.

The EEOC also argues that this Office lacks authority to address the questions presented under Executive Order 12146. Sections 1-401 and 1-402 of that Order provide:

> 1-4. Resolution of Interagency Legal Disputes
>
> 1-401. Whenever two or more Executive agencies are unable to re-solve a legal dispute between them, including the question of which has jurisdiction to administer a particular program or to regulate a

---

[1] Although we have not previously addressed the issue raised by the EEOC here, we have in the past responded to requests for opinions that challenged EEOC regulations after they had been issued. *See, e.g.*, *Authority of the Equal Employment Opportunity Commission to Impose Monetary Sanctions Against Federal Agencies for Failure to Comply With Orders Issued by EEOC Administrative Judges*, 27 Op. O.L.C. 24 (2003) (discussing whether the EEOC has the authority to award attorney's fees against an agency as the EEOC had pursuant to 29 C.F.R. § 1614.109 and Management Directive 110).

particular activity, each agency is encouraged to submit the dispute to the Attorney General.

1-402. Whenever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve such a legal dispute, the agencies shall submit the dispute to the Attorney General prior to proceeding in any court, except where there is a specific statutory vesting of responsibility for a resolution elsewhere.

Exec. Order No. 12146, 3 C.F.R. § 411 (1980). The EEOC makes two arguments with respect to section 1-4 of this Executive Order, both of which we find unpersuasive.

First, the EEOC argues that section 1-402 is inapplicable because the Postmaster General "does not serve at the pleasure of the President." EEOC Letter at 2. Even if so, section 1-402 does not prevent us from resolving the merits of this dispute. As we recently explained, section 1-402 does not prohibit an agency from requesting, or the Attorney General from rendering, an opinion properly requested pursuant to some other authority, such as section 1-401 of the Executive Order. *See Applicability of Anti-Discrimination Statutes to the Presidio Trust*, 28 Op. O.L.C. 84, 85–90 (2004) ("*Presidio Trust*"). Rather, "all that section 1-402 does is establish a requirement that agencies must satisfy before they are permitted to bring action in court." *Id.* at 87. Thus, even if the head of the USPS does not serve at the pleasure of the President—a question on which we express no view—that would simply mean that the USPS is not bound by the procedural requirements of section 1-402. It would not, however, prevent the USPS from seeking our views or prohibit us from addressing the questions you have raised.

This brings us to the EEOC's second argument: that we lack authority to resolve this issue under section 1-401 of the Executive Order because there is no unresolved dispute here within the meaning of that section. In particular, the EEOC states that "[a]lthough EEOC met with USPS last year to discuss our class complaint regulation, USPS did not raise any of the specific objections raised in its August 13 letter [to this Office]." EEOC Letter at 2. Thus, explains the EEOC, "[n]ot only has there been no attempt to resolve the 'dispute' at hand, EEOC did not learn of USPS'[s] allegation that our class complaint regulation violates Title VII until we received a copy of their letter from your office." *Id.* We would, of course, encourage agencies to attempt to resolve legal disputes amongst themselves prior to seeking the views of this Office. But the failure to do so does not deprive us of authority under section 1-401 to render an opinion on the legal questions that USPS has presented. Nothing in section 1-401 establishes a procedure by which agencies must attempt to resolve a dispute before seeking an opinion from the Attorney General: all that is required by that section is the presence of a legal dispute that they have been "unable to resolve." And here, the letters to us from the EEOC and the USPS make clear that these agencies have

been "unable to resolve" the question whether the EEOC's class action regulations are contrary to Title VII. *Compare* Letter for M. Edward Whelan III, Acting Assistant Attorney General, Office of Legal Counsel, from Mary Anne Gibbons, Vice President and General Counsel, United States Postal Service, *Re: EEOC Class Actions* at 1 (Aug. 13, 2003) ("USPS Letter") ("The Commission's class action regulations are invalid because they are contrary to three fundamental principles embodied in Title VII of 1964."), *with* EEOC Letter at 3 ("We believe that USPS is misinterpreting our regulation, and disagree with their allegations that our regulation conflicts with Title VII."). *See also Presidio Trust*, 28 Op. O.L.C. at 86 n.4 (noting that "as the submissions to us from the Trust and the EEOC make clear, the Trust and the EEOC have not resolved their dispute on this broader legal issue") (internal citation omitted).

We therefore reject the view that USPS's failure to raise with the EEOC the legal basis for its challenge before coming to us deprives us of the authority to resolve this ongoing dispute.

## III.

We now turn to the merits of the legal questions you have raised. In particular, you have challenged the EEOC's class action regulations as "contrary to three fundamental principles embodied" in Title VII, the statutory scheme they are intended to enforce. USPS Letter at 1. First, you state that the regulations purport to bind complainants to EEOC determinations in violation of their statutory right to bring an action in federal court once they have exhausted their administrative remedies. *Id.* at 1, 2–4. Second, you state that the regulations are inconsistent with applicable exhaustion requirements because they frustrate the agency's ability to resolve administrative complaints and because they create the possibility that class members will be able to sue in federal court without having filed an administrative complaint. *Id.* at 1, 4–7. And third, you state that the regulations are inconsistent with the applicable statute of limitations, again because, by creating the possibility that class members will be able to sue in federal court without having filed an administrative complaint and by failing to provide for notice of final agency action to non-filing members, they forestall the running of the statutory limitations period with respect to such members. *Id.* at 1, 7–8. For the reasons explained below, we do not believe that the EEOC's class action regulations are inconsistent with Title VII in the manners you suggest.[2]

---

[2] Our opinion is limited to whether EEOC's class action regulations are contrary to the statute on the three bases you indicate; we do not address here any other possible grounds for challenging the regulations.

## A.

Resolution of the legal issues presented here is guided by the administrative law principles applied by the Supreme Court in *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Court's recent extended application of the doctrine first set out in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In *Mead*, the Court addressed both the circumstances in which deference under *Chevron* is owed to an agency's implementation of a statute as well as the substantive scope of that deference.

With respect to the former, the Court explained that *Chevron* deference is due where "the agency's generally conferred authority and other statutory circumstances" suggest that "Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law." *Mead*, 533 U.S. at 229. Paradigmatic of such circumstances are "express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* As the Court summarized:

> [A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

*Id.* at 226–27; *see also id.* at 230 ("It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force . . . . Thus, the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication.").

Notice-and-comment rulemaking, however, is not a prerequisite for *Chevron* deference, provided that "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority," a delegation, the Court explained, that "may be shown in a variety of ways." *Id.* at 226–27. In *Mead*, the Court thus observed that "as significant as notice-and-comment rulemaking is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded." *Id.* at 230–31. *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997)

(An agency's "interpretation of [its own regulations] is . . . controlling unless 'plainly erroneous or inconsistent with the regulation.' "). And even where an agency rule does not qualify for *Chevron* deference, it still may be entitled to deference under a lesser standard. *See Mead*, 533 U.S. at 234–35.

Where *Chevron* deference is due, the Court explained that the scope of an agency's regulatory authority is broad indeed:

> When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.

*Mead*, 533 U.S. at 227 (quoting *Chevron*, 467 U.S. at 843–44); *see also id.* at 229 (where *Chevron* deference is due, "a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise, but is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable").

Here, it is clear that the EEOC's class action regulations are entitled to *Chevron* deference: Congress has specifically authorized the EEOC "to enforce the provisions of subsection (a) of this section through appropriate remedies . . . and . . . issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section," 42 U.S.C. § 2000e-16(b), and in furtherance of this authority, the EEOC promulgated these regulations pursuant to notice-and-comment rulemaking, in which federal government agencies fully participated. *See* 57 Fed. Reg. 12,634 (Apr. 10, 1992); 64 Fed. Reg. 37,644 (July 12, 1999).[3] It is for this reason, perhaps, that you have not suggested that these regulations are "procedurally defective" or "arbitrary or capricious in substance." *Mead*, 533 U.S. at 227. The question before us, then, is whether they are "manifestly contrary to the statute" that they are intended to

---

[3] It is true that the Supreme Court has not accorded *Chevron* deference to certain of the EEOC's substantive regulations. *See, e.g.*, *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991); *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976). But that is because "'Congress, in enacting Title VII, did not confer upon the EEOC'" such authority. *Arabian Am. Oil Co.*, 499 U.S. at 257 (quoting *Gen. Elec. Co.*, 429 U.S. at 141). Here, the EEOC's regulations are procedural in nature, and Congress has expressly granted the EEOC the authority "to enforce the provisions of subsection (a) of this section through appropriate remedies . . . and . . . issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42 U.S.C. § 2000e-16(b). *See also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002) (noting that "[t]he first [threshold question] is whether the [EEOC's] rulemaking exceeded its authority to adopt 'suitable procedural regulations,' 42 U.S.C. § 2000e-12(a), and instead addressed a substantive issue over which the EEOC has no rulemaking power") (citations omitted); *id.* at 122–23 (O'Connor, J., concurring).

implement in any of the three ways you have indicated. *Id.* It is to these questions that we now turn.

## B.

You have asserted three ways in which you believe that the EEOC's class action regulations are contrary to Title VII. We address each in turn.

## 1.

You first state that the EEOC's regulations are inconsistent with Title VII because they purport to "bind" complainants when, pursuant to the statute, complainants may proceed in federal court if they are dissatisfied with the results of the administrative proceeding. USPS Letter at 1, 2–4. In particular, you note several portions of the class action regulations that state or suggest that class members are "bound" by the results of the administrative proceeding, including 29 C.F.R. § 1614.204(e)(2)(iii) (requiring the agency to provide complainants with "[a]n explanation of the binding nature of the [agency's] final decision or resolution of the complaint on class members"), 29 C.F.R. § 1614.204(g)(4) ("If the administrative judge finds that the resolution [of the complaint by the agency and the agent of the class] is fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class."), and 29 C.F.R. § 1614.204(j)(6) ("A final decision on a class complaint shall, subject to subpart D of this part, be binding on all members of the class and the agency."). *See* USPS Letter at 2 (citing the foregoing authorities); *see also id.* at 2 n.5 (citing EEOC Management Directive ("MD") 110, ch. 8, § V.C ("The class members may not 'opt out' of the defined class"), *available at* http://www.eeoc.gov/federal/md110/chapter8.html (last visited Sept. 14, 2004)). In contrast, you note that Title VII expressly provides that "an employee or applicant for employment, if aggrieved by the final disposition of his complaint . . . may file a civil action" in federal district court. 42 U.S.C. § 2000e-16(c). It is your view that the former regulatory provisions are inconsistent with the latter statutory one.

We disagree. If the cited regulations purported to preclude a complainant from filing a civil action in federal district court, then your assertion might have merit. But they do not. Quite to the contrary, the regulations expressly permit the filing of an action by a complainant in federal court once administrative remedies are exhausted. They thus expressly provide that "[a] final decision on a class complaint shall, *subject to subpart D of this part*, be binding on all members of the class and the agency." 29 C.F.R. § 1614.204(j)(6) (emphasis added). Subpart D, in turn, details, in relevant part, the manner in which the complainant may file a civil action in federal district court. *Id.* § 1614.401–.409. In particular, subpart D authorizes class agents and class members who have "filed an individual complaint [or] a claim for individual relief pursuant to a class complaint" to file an action directly

in federal court either within ninety days of receipt of notice of final agency action or 180 days after the date of filing the class complaint. *Id.* § 1614.407(a), (b). The regulation also recognizes the right to file a complaint in federal district court following the completion of the EEOC appeals process or 180 days after the filing of the appeal. *Id.* § 1614.407(c), (d).

To be sure, several of the EEOC's regulations refer to various aspects of the administrative process as "binding" complainants. But read in context—particularly in the context of the regulatory provisions expressly authorizing a complainant to bring a civil action in federal district court—it is evident that these references mean only that complainants are "bound" insofar as the administrative process is concerned.[4] Indeed, one of the regulations that you cite expressly so recognizes. *See id.* § 1614.204(j)(6) ("A final decision on a class complaint shall, *subject to subpart D of this part*, be binding on all members of the class and the agency.") (emphasis added); *see also id.* § 1614.204(j)(7) ("The final decision shall inform the agent of the right to appeal *or to file a civil action* in accordance with subpart D of this part and of the applicable time limits.") (emphasis added). And the other regulatory provisions that you cite in no way purport to close the federal court avenue that other regulatory provisions (and the statute) expressly recognize as open. In short, as the EEOC acknowledges, its "regulation is binding in the administrative, not the judicial, process." EEOC Letter at 4.

It may well be, as you state in your letter, that "[t]he Commission's intent to bind agencies to a class action process that cannot bind class members is contrary to the proper purpose of class action regulations," USPS Letter at 3, and we recognize that the ability of dissatisfied class members to bring suit in federal court may significantly hamper an agency's ability to resolve complaints on a truly class-wide basis. But the distinction between complainants and agencies is drawn in Title VII itself, which guarantees a right to proceed in federal court only to complainants. *See* 42 U.S.C. § 2000e-16(c). Nor are we entitled to second-guess EEOC policy choices made within the bounds of the law. It is the EEOC, and not this Office or the USPS, that Congress directed to "issue such rules, regulations, orders and instructions *as it deems necessary and appropriate* to carry out its responsibilities under this section." 42 U.S.C. § 2000e-16(b) (emphasis added).

---

[4] This conclusion is true even with respect to an individual who did not file an administrative complaint that, had it been filed, would have been subsumed within a class complaint. If the EEOC were to reject the class complaint on the merits, and this individual were then to file an administrative complaint, then the individual likely would be "bound" by the EEOC's prior decision in the administrative context. In other words, the EEOC likely would reject this individual's complaint under principles of res judicata. *See* 29 C.F.R. § 1614.107(a)(1); *id.* § 1614.204(d)(2). Nothing in the EEOC's regulations, however, prohibits this individual from then proceeding to file an action in federal court. Likewise, nothing in those regulations prohibits a class member from filing a civil action if he is dissatisfied with a resolution of a class complaint approved by the administrative judge in accordance with 29 C.F.R. § 1614.204(g).

**2.**

You next assert that the EEOC's class action regulations frustrate the ability of agencies to resolve claims within the 180-day period that Congress prescribed. USPS Letter at 1, 4–7. You thus explain that, in your view, 42 U.S.C. § 2000e-16(c) reflects Congress's intention that an agency have the opportunity to resolve an employment discrimination claim within 180 days. That statutory provision provides that a complainant may file a civil action in federal district court "after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint." *Id.* The EEOC's class action regulations, you explain, frustrate an agency's ability to resolve a claim within this 180-day period in two distinct ways. We address each separately and conclude that neither demonstrates an inconsistency between the regulations and 42 U.S.C. § 2000e-16.

**a.**

The first way in which you believe that the EEOC's class action regulations are inconsistent with 42 U.S.C. § 2000e-16(c)'s 180-day period is that, where the administrative judge takes longer than 180 days to decide whether to certify a class, the practical effect of the regulations is to prevent an agency from considering the merits of individual claims of discrimination until after the 180-day period has run. In particular, MD 110 states that an "agency shall, within thirty (30) days of receipt of a decision dismissing a class complaint, . . . process . . . each individual complaint that was subsumed into the class complaint." MD 110, ch. 8, § III.C.[5] Since the regulations prescribe no time limit for the administrative judge's decision, it is possible that such decision will not issue until shortly before or even after the 180-day period has run. If so (and for purposes of this opinion, we will assume *arguendo* that this is a common scenario), then it is your contention that an individual complainant will be authorized to file a civil action in federal district court before the agency has ever had an opportunity to resolve the claim administratively.

The premise of this argument is that 42 U.S.C. § 2000e-16(c) accords an agency the right to address a complaint during the 180-day period. Even assuming

---

[5] Unlike the EEOC's regulations, MD 110 was not promulgated pursuant to notice-and-comment rulemaking. We need not decide whether it is entitled to *Chevron* deference, however, because, for the reasons set forth in text, we believe it clear that the quoted provision is consistent with 42 U.S.C. § 2000e-16(c)'s 180-day rule, *see Edelman*, 535 U.S. at 114 ("Because we so clearly agree with the EEOC, there is no occasion to defer and no point in asking what kind of deference, or how much."), and because the USPS has identified no other basis upon which the portion of the management directive that it cites could be called into question.

*arguendo* that this interpretation of that provision is an accurate one,[6] there simply is nothing in EEOC regulations or MD 110 that precludes an agency from acting upon a class complaint or an individual complaint subsumed therein within the 180-day period, regardless of whether an administrative judge has rendered the class certification decision. With respect to individual complaints, the EEOC regulations generally require an agency to act within 180 days. *See* 29 C.F.R. § 1614.108(e). All that MD 110 does is relieve the agency of this obligation with respect to class complaints and individual complaints subsumed therein, replacing it with the obligation to act "within thirty (30) days of receipt of a decision dismissing a class complaint." MD 110, ch. 8, § III.C. Nothing in the regulations or MD 110, however, prohibits the agency from acting sooner, as the EEOC acknowledges. *See* EEOC Letter at 6–7 ("[T]he agency can always attempt to resolve the class complaint during the first 180 days that it is pending.").[7]

### b.

Second, you believe that individuals who do not file administrative complaints may, under the EEOC's regulations, be entitled to initiate a civil action in federal district court, again preventing the agency from ever having an opportunity to resolve that complaint administratively. This argument, as we understand it, is predicated on the notion that an individual who, had he filed an administrative complaint, would have been subsumed into the certified class, but who does not in fact file an administrative complaint, would be allowed to initiate a suit in district court in the same manner as those class members who did file administrative claims. This argument, again, as we understand it, is predicated upon the so-called "single-filing rule," pursuant to which lower federal courts have allowed an individual who did not file an administrative complaint to join the civil suit of another individual who did exhaust the administrative process, where the claims of the two individuals are sufficiently similar. *See, e.g.*, *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1100–02 (2d Cir. 1986); *De Medina v. Reinhardt*, 686 F.2d 997, 1012–13 (D.C. Cir. 1982); *Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1380–81 (11th Cir. 1983); *Greene v. City of Boston*, 204 F. Supp. 2d 239, 241–43 (D. Mass. 2002).

---

[6] It is not at all clear that this assumption is a correct one. The EEOC argues that 42 U.S.C. § 2000e-16(c) is simply a "restriction on the employee's right to file suit," EEOC Letter at 5; it does not, in other words, entitle or require an agency to do anything. We need not resolve this issue, however, because even assuming *arguendo* that USPS's characterization of section 2000e-16(c) is correct, it is not in conflict with EEOC's class action regulations.

[7] It is true that some EEOC administrative decisions suggest that the normal course of action is for an agency to consider the merits of the complaint after the certification issue is decided. *See, e.g.*, *Fosnacht v. Apfel*, Appeal No. 01992528, 2000 WL 361743 (EEOC Mar. 29, 2000); *Travis v. Potter*, Appeal No. 01992222, 2002 WL 31359446 (EEOC Oct. 10, 2002). These decisions, however, did not address whether, much less hold that, an agency is prohibited from acting until after it receives the class certification decision.

Again, however, this argument points to no inconsistency between the EEOC's class action regulations and Title VII. The only individuals EEOC's class action regulations specifically authorize to initiate an action in federal court are those who file individual complaints, those who file class complaints, and those who have filed a claim for individual relief pursuant to a class complaint. *See* 29 C.F.R. § 1614.407 ("A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized . . . to file a civil action in an appropriate United States District Court."). Nothing in these regulations authorizes individuals who do not file administrative complaints or claims for individual relief to bring civil actions in federal court; it therefore follows that nothing in these regulations authorizes an individual to bring a civil action notwithstanding the exhaustion requirement set out in 42 U.S.C. § 2000e-16(c), which, as we have explained, authorizes an individual to bring a civil action only 180 days after he has filed an administrative complaint. And significantly, the EEOC itself seems to accept this view of its regulations, explaining to us:

> Our regulations only recognize suit rights for class members who file individual complaints, class complaints, or individual claims for relief under a class complaint. Therefore, if class certification is denied or class discrimination is not found, those individuals who did not file individual complaints may have lost the ability to file suit. In other words, filing an individual complaint is the only way for a potential class member to ensure his or her right to sue with certainty.

EEOC Letter at 6.

It is true that under the so-called "single-filing rule," some courts have allowed an individual who did not file an administrative complaint to join the civil suit of another individual who did exhaust the administrative process, where the claims of the two individuals are sufficiently similar. But even assuming that courts would extend this rule in the manner that you suggest—such that an individual who did not file an administrative complaint but whose claim, had it been filed administratively, would have fallen within the class, could initiate a civil action in federal district court to the same extent as a class member who did file an administrative complaint[8]—the result would still point to no inconsistency between 42 U.S.C. § 2000e-16(c) and the EEOC's class action regulations. The single-filing rule does not rest on an interpretation of EEOC regulations; rather, it rests on an interpretation of 42 U.S.C. § 2000e-16(c) or other analogous provisions—one in which the *statutes* have been construed to permit an individual who did not exhaust his

---

[8] *But see Commc'n Workers of Am. v. N.J. Dep't of Personnel*, 282 F.3d 213, 218 (3d Cir. 2002) ("[I]f plaintiffs choose to bring suit individually, they must first satisfy the prerequisite of filing a timely EEOC charge.") (citation and quotation omitted).

administrative remedies to piggyback upon an individual who did. *See, e.g.*, *Snell*, 782 F.2d at 1100–02 & n.7; *Greene*, 204 F. Supp. 2d at 240. The EEOC's regulations do not expressly expand the single-filing rule in the manner you suggest, and to the extent that the courts may construe them to do so, the courts would construe them so as to be consistent with—not to *conflict* with—the statute. (Conversely, were it determined that 42 U.S.C. § 2000e-16(b) does not permit the single-filing rule to be extended in the manner that you suggest, we have little doubt that the regulations too would be similarly construed.[9])

Accordingly, the possibility you have presented—that an individual would be permitted to initiate an action in federal court without ever having to file an administrative complaint—again points to no inconsistency between the statute and EEOC's regulations in implementation thereof.

## 3.

Finally, you contend that EEOC's class action regulations are inconsistent with the limitations period set forth in 42 U.S.C. § 2000e-16(c), which allows a complainant to file a civil action in federal district court only within ninety days of receipt of notice of final agency or EEOC action. As you note, this ninety-day period does not begin to run until "receipt of notice of final action" on a complaint of discrimination. 42 U.S.C. § 2000e-16(c). But, you state, under the EEOC's regulations, not all members who have a right to bring suit in federal court will receive the required notice; these class members who never receive notice, therefore, will be entitled to bring suit in federal court even after the ninety-day period. USPS Letter at 7.

Under the EEOC's regulations, however, every complainant who files an administrative claim will receive the requisite notice of final agency or EEOC action. If the class is certified, then "[t]he agency shall notify class members of the final decision and relief awarded, if any." 29 C.F.R. § 1614.204(k). If the class is not certified, then, in addition to notifying the class agent, *id.* § 1614.204(d)(7), the agency "shall, within thirty (30) days of receipt of a decision dismissing a class complaint . . . issue the acknowledgment of receipt of an individual complaint . . . and process . . . each individual complaint that was subsumed into the class complaint," MD 110, ch. 8, § III.C. And if the class complaint is settled, "[n]otice of the resolution shall be given to all class members . . . [including notification] that . . . any member of the class may petition the administrative judge to vacate

---

[9] To the extent your argument is based on case law arising under Rule 23 of the Federal Rules of Civil Procedure (and hence, outside of the administrative context), s*ee, e.g.*, USPS Letter at 6 & n.29, we believe it fails for the same reason. If such case law were extended to permit an individual who fails to satisfy the administrative exhaustion requirement nevertheless to file suit in federal court, this apparently unprecedented application of Rule 23 case law would necessarily be predicated upon an interpretation of Title VII and regulations that rendered them consistent, rather than in conflict with, one another.

the resolution." 29 C.F.R. § 1614.204(g)(4). Every individual who files an administrative complaint, in other words, will receive notice of final agency action and thus will be fully subject to 42 U.S.C. § 2000e-16(c)'s ninety-day limitation period. *See also* EEOC Letter at 7 ("The regulation requires notice to all individuals except those potential members of a class that was not certified who did not file individual complaints.").

That leaves only individuals who do not file an administrative complaint. But with respect to these, your arguments fail for the same reasons discussed in Part II.B.2.b, *supra*: First, the regulations on their face only authorize those individuals who have filed an administrative complaint to bring suit in federal court; these individuals, we have explained, will receive notice and thus will be subject to the ninety-day period. And second, to the extent that courts would allow individuals who have not filed administrative claims to bring suit in federal court notwithstanding 42 U.S.C. § 2000e-16(c), this result would follow from a construction of the statute itself, not a construction of the regulations that would render them inconsistent with the statute.

## IV.

For the foregoing reasons, we conclude that the EEOC's class action regulations are not contrary to Title VII in any of the three ways you have suggested.

NOEL J. FRANCISCO
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
